# Exhibit A

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND-ODESSA DIVISION

| | |
|---|---|
| **RICHARD HARRIS, JR.**, individually and on behalf of all persons similarly situated, | Civil Action No. 7:16-cv-00302-RAJ |
| **Plaintiff,** | |
| v. | Collective Action |
| **BRONCS, INC.,** | |
| **Defendant.** | |

## SETTLEMENT AGREEMENT

Plaintiff Richard Harris, Jr. ("Harris" or "Plaintiff") and Defendant Broncs, Inc. ("Broncs") (collectively, the "Parties") hereby agree to the following binding settlement of the putative collective action lawsuit captioned *Harris v. Broncs, Inc.,* No. 7:16-cv-00302-RAJ (W.D. Tex.), which was originally filed as *Harris v. Broncs, Inc.*, No. 2:16-cv-00728-MRH (W.D. Pa.) (the "Litigation").

**WHEREAS**, Harris filed a Complaint in the Litigation asserting claims against Broncs under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and Pennsylvania law, for the alleged failure to pay overtime compensation to Plaintiff and similarly situated individuals; and

**WHEREAS**, Broncs denies all of the allegations made by Harris in the Litigation and denies that it is liable or owes damages to anyone with respect to the alleged facts or causes of action asserted in the Litigation. Nonetheless, without admitting or conceding any liability or damages whatsoever, Broncs has agreed to settle the Litigation on the terms and conditions set forth in this Settlement Agreement (the "Agreement"); and

**WHEREAS**, on February 7, 2017, the Court granted in part Plaintiff's Motion for Conditional Certification and Notice to the Putative Class Members (Dkt. No. 40). Plaintiff sent notice to potential opt-in plaintiffs on February 22, 2017. The notice period concluded on April 22, 2017. There are a total of twelve (12) opt-in Plaintiffs, including Plaintiff.

**WHEREAS**, on August 24, 2017, the Parties participated in an in-person mediation session of the Litigation, which was conducted by experienced mediator Guy N. Harrison in Houston, Texas, and the Parties reached an accord during mediation, which resulted in this Agreement; and

**WHEREAS**, Plaintiffs' Counsel analyzed and evaluated the merits of the claims made against Broncs in the Litigation, conducted interviews with Harris, obtained and reviewed documents relating to Broncs' compensation policies and practices, and analyzed payroll data, and based upon their analysis and evaluation of a number of factors, and recognizing the substantial risks of litigation, Plaintiffs' Counsel are satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate and that this Agreement is in the best interests of the Plaintiff and all the similarly situated opt-in Plaintiffs who filed a consent to join this Litigation.

**NOW, THEREFORE**, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties agree to a full and complete settlement of the Litigation on the following terms and conditions:

1. Plaintiff and Broncs agree that Fair Labor Standards Act ("FLSA") collective action treatment is proper and further agree that evidence of this limited stipulation for settlement purposes only will not be admissible for any reason except to obtain approval of or to enforce this Agreement. Should this Agreement not be approved by the Court, the stipulation to final certification herein below shall not be admissible in any judicial proceeding. For settlement purposes only, the Parties will stipulate that the following collective may be certified and defined as follows:

> All current or former employees of Broncs, Inc. ("Broncs") who performed work in the United States, and who have opted in to the *Harris v. Broncs, Inc.*, No. 7:16-cv-00302-RAJ (W.D. Tex.) (the "Settlement Collective" or "Collective Members").

There are 12 members of the Settlement Collective, including Plaintiff.

2. This Litigation is settled for the sum of Three Hundred Thirty-Three Thousand Dollars ($333,000.00) (the "Gross Settlement Amount"). The Gross Settlement Amount includes: (a) Plaintiffs' Counsels' attorneys' fees in an amount not to exceed thirty-five (35%) percent of the Gross Settlement Amount, subject to the Court's approval; (b) Plaintiffs' Counsels' out-of-pocket costs as approved by the Court; and (c) a "Service Award" in the amount of $10,000 to Harris. Broncs shall be responsible for its own attorneys' fees and costs. The Gross Settlement Amount excludes Broncs' share of payroll taxes.

3. The "Net Settlement Amount" shall be calculated by subtracting the amounts itemized in Paragraph 2(a) through (d) from the Gross Settlement Amount. Each Collective Member will be entitled to receive a "Settlement Award" that shall be calculated from the Net Settlement Amount as follows:

> a. The amount of $250 per Collective Member will be deducted from the Net Settlement Amount prior to the determination of *pro rata* individual settlement shares and allocated to each Collective Member so that each Collective Member receives at least $250 in exchange for his/her release in this Agreement.

2

  b. Collective Members will receive settlement shares which equal the total number of workweeks s/he worked for Broncs between June 2, 2013 and March 1, 2016.

  c. The total number of settlement shares will be added together and the resulting sum will be divided into the Net Settlement Amount (less the allocation of $250 per Collective Member) to reach a per share dollar figure. The figure will then be multiplied by each Collective Member's number of settlement shares, and added to the $250 set aside to determine the Collective Member's Settlement Award.

  d. All Settlement Award determinations shall be based on Broncs' available payroll data for Collective Members, and shall be provided to Broncs by Plaintiffs' Counsel.

4. Fifty percent (50%) of each Collective Member's Settlement Award shall be treated as back wages so Broncs shall effectuate federal and applicable state income and other employment tax withholding as required by law with respect to that 50%. Broncs shall pay all required withholding taxes and other payroll taxes (including unemployment insurance taxes) to the appropriate governmental authorities. The remaining 50% of each Settlement Award shall be treated as non-wage interest and/or damages or liquidated damages, shall be reported on an IRS Form 1099, and shall not be subject to withholding taxes. Notwithstanding the treatment of the Settlement Awards above, none of the payments, including the back wages portion, will be treated as earnings or wages under any benefit or retirement plans. Finally, Plaintiffs' Counsel will be issued an IRS Form 1099 from Broncs for the award of attorneys' fees and costs and Harris will be issued an IRS Form 1099 with respect to his Service Award.

5. Within ten (10) business days after the Court's Approval Order, Plaintiffs' Counsel shall provide Broncs' counsel with final Settlement Award amounts for each Settlement Class Member.

6. Within ten (10) business days after Broncs receives the Settlement Award amounts, Broncs shall send the Settlement Awards for the Settlement Class Members and the service award for Harris to Plaintiff's counsel for distribution.

7. Plaintiff's counsel will send all Settlement Class Members via First Class Mail or Federal Express: (1) a "Notice of Settlement," in the form attached hereto as Exhibit A, and (2) a settlement check in the amount of their Settlement Award.

8. All settlement checks issued will be valid and negotiable for a period of one hundred eighty (180) days (the "Check-Cashing Period"), and shall accompany the Notice of Settlement stating that the checks are valid and negotiable for a period of 180 days. Plaintiffs' Counsel may call those that have still not cashed their check to remind them to do so within the last sixty (60) days of the Check-Cashing Period.

9. Plaintiff and Collective Members who cash their settlement checks shall release any and all overtime claims that accrued during their employment as a flowback operator and/or service hand with Broncs and all of its past and present parent companies, investors in any of those companies, controlling persons, subsidiaries, affiliates, directors, officers, and

3

agents (collectively, the "Released Parties") at any time prior to March 1, 2016 including, without limitation, all state and federal claims for unpaid overtime wages, and related claims for penalties, interest, liquidated damages, attorneys' fees, costs, and expenses (collectively, the "Released Claims").. The Parties acknowledge that Collective Members who do not cash their settlement check will not release any claims against Broncs.

10. Broncs shall not discourage Collective Members from participating in the settlement, and shall not take any retaliatory actions against Collective Members who cash in their Settlement Awards.

11. In addition, Harris also hereby grants a general release to the Released Parties as additional consideration for his Service Award. This general release shall include all demands, claims and actions, whether known or unknown, relating to his employment or termination of employment with Broncs, including but not limited to claims under the Americans With Disabilities Act, National Labor Relations Act, Fair Labor Standards Act (including, but not limited to, all claims for overtime compensation and all claims in the Litigation) Equal Pay Act, Employee Retirement Income Security Act of 1974, Worker Adjustment and Retraining Notification Act, Title VII of the Civil Rights Act of 1964, Age Discrimination in Employment Act, Civil Rights Acts of 1866, 1871 and 1991, Family and Medical Leave Act, and any other federal, state or local statute, regulation, and order, and in common law, through the date Harris signs this Agreement; provided, however, that Harris does not release any claim that cannot be released as a matter of law or rights under this Agreement.

12. Each settlement check will contain the following limited endorsement, placed on the back of the check by Broncs, to effectuate a release of claims and satisfy any applicable procedural protocols under the FLSA:

> By depositing or cashing this check, I hereby agree to release Broncs, Inc. and all of its past and present parent companies, investors in any of those companies, controlling persons, subsidiaries, affiliates, directors, officers, and agents, from all overtime and wage claims that accrued during my employment as a flowback operator and/or service hand with Broncs at any time prior to March 1, 2016, including, without limitations, all state and federal claims for unpaid overtime wages, and related claims for penalties, interest, liquidated damages, attorneys' fees, costs, and expenses.

Members of the Settlement Collective who do not cash their settlement checks will not release any claims against Broncs.

13. At any point in the Check-Cashing Period, Broncs shall have the authority to stop payment on a lost check and issue a new check to an eligible Collective Member upon request. Broncs will maintain copies of all checks and shall prepare and send a report to Plaintiff's counsel at the conclusion of the Check-Cashing Period listing the names of all Collective Members who signed, deposited and/or cashed their settlement checks, as well as the names of those whose settlement checks were lost or replaced, if any.

14.     If Collective Members do not sign, deposit and/or cash their settlement checks by the 180-day deadline, any uncashed checks shall be remitted by Broncs to the *cy pres* recipient, Great Houston Community Foundation Hurricane Harvey Relief Fund, upon approval by the Court.  No amount of the Gross Settlement Amount shall revert to Broncs.

15.     Subject to the Court's approval, Plaintiffs' Counsel shall receive attorneys' fees in an amount up to thirty-five (35%) percent of the Gross Settlement Amount, which will compensate Plaintiffs' Counsel for all work performed in the Litigation as of the date of this Agreement as well as all of the work remaining to be performed to accomplish the terms of this Agreement, including but not limited to finalizing the settlement, securing Court approval of this Agreement, making sure that this Agreement is fairly administered and implemented, and obtaining final dismissal of the Litigation.  In addition, Plaintiffs' Counsel shall receive reimbursement of their out-of-pocket costs approved by the Court. Payment of attorneys' fees and out-of-pocket costs shall be made within ten (10) business days after Broncs remits its payment into the QSF.

16.     Harris and Broncs agree to fully cooperate with each other to accomplish the terms of this Agreement, including but not limited to executing such documents and taking such other action as may reasonably be necessary to implement the terms of this Agreement. Both will use their best efforts, including all efforts contemplated by this Agreement and any other efforts that may become necessary or ordered by the Court, to effectuate this Agreement and the terms set forth herein. As soon as practicable after execution of this Agreement, Plaintiffs' Counsel will, with the assistance and cooperation of Broncs and its counsel, take all necessary steps to secure the Court's approval of this Agreement and to implement its terms. Neither will issue any press releases concerning this Agreement nor discourage participation in this Agreement.

17.     If the Court does not enter an Approval Order, or decides to do so only with material modifications to the terms of the Agreement, of if the Approval Order is reversed or vacated by an appellate Court, then this Agreement shall become null and void, unless the Parties agree in writing to modify this Agreement and the Court approves of such modified agreement.

18.     The signatories to this Agreement represent that each is fully authorized to enter into this Agreement on behalf of themselves and/or their respective principals. The Notice of Settlement will inform all Collective Members of the binding nature of this Agreement and that it will have the same force and effect as if this Agreement were executed by each Collective Member.

DocuSign Envelope ID: E7E04ECA-771B-4196-B816-C832047AAD59

**FOR HARRIS AND THE COLLECTIVE**

_____    Dated: 11/14/17
Shanon J. Carson
Sarah R. Schalman-Bergen
Camille Fundora
BERGER & MONTAGUE, P.C.

Clif Alexander
ANDERSON2X, PLLC

**RICHARD HARRIS, JR.**

_____    Dated: 11/14/2017
Richard Harris, Jr.

**FOR BRONCS, INC.**

                                  Dated: _____
_____
Name:


_____    Dated: _____
John Michael Rose
Sean W. Kilian
Locke Lord LLP

6

**FOR HARRIS AND THE COLLECTIVE**

_____  Dated: _____
Shanon J. Carson
Sarah R. Schalman-Bergen
Camille Fundora
BERGER & MONTAGUE, P.C.

Clif Alexander
ANDERSON2X, PLLC

**RICHARD HARRIS, JR.**

_____  Dated: _____
Richard Harris, Jr.

**FOR BRONCS, INC.**

_____  Dated: 11/21/17
Name:

_____  Dated: 11/26/17
John Michael Rose
Sean W. Kilian
Locke Lord LLP

6

# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND-ODESSA DIVISION

| | | |
|---|---|---|
| **RICHARD HARRIS, JR., individually and on behalf of all persons similarly situated,** | : : : | Civil Action No. 7:16-cv-00302-RAJ |
| **Plaintiff,** | : : : | |
| **v.** | : : | Collective Action |
| **BRONCS, INC.,** | : : : | |
| **Defendant.** | : : : | |

### NOTICE OF COLLECTIVE ACTION SETTLEMENT
### AND SETTLEMENT CHECK

TO:    [Collective Member Name]
       [Address]
       [Last Four Digits of Social Security No.]

*The Court authorized this Notice of Collective Action Settlement
and Settlement Award Check. This is not a solicitation.
This is not a lawsuit against you and you are not being sued.*

**PLEASE READ THIS NOTICE CAREFULLY.**

| **1.** | **Why Should You Read This Notice?** |
|---|---|

You received this Notice because you opted in to the *Harris v. Broncs, Inc.*, No. 7:16-cv-00302-RAJ (W.D. Tex.) lawsuit as of April 22, 2017 and are a member of the "Settlement Collective."

The parties to the lawsuit agreed to a binding settlement of this lawsuit – which alleges that Settlement Collective members should have been paid overtime compensation – on behalf of the 12 Settlement Collective members. On [DATE], the Court approved the settlement as fair and reasonable.

**This Notice explains the terms of the settlement and your right to your award under the settlement.**

8

**2.     How Is My Settlement Award Calculated?**

Under the terms of the Settlement Agreement ("Settlement Agreement"), Broncs has agreed to pay Three Hundred Thirty-Three Thousand Dollars ($333,000.00) to settle the claims asserted in this lawsuit (the "Gross Settlement Amount"). Deductions from this amount will be made for (a) Plaintiffs' Counsels' attorneys' fees in an amount not to exceed thirty-five (35%) percent of the Gross Settlement Amount, subject to the Court's approval; (b) Plaintiffs' Counsels' out-of-pocket costs as approved by the Court; and (c) service award of $10,000 for Plaintiff Richard Harris, Jr. After subtracting these amounts from the Gross Settlement Amount, the balance of the funds (the "Net Settlement Amount") shall be apportioned into each Settlement Collective member's "Settlement Award."

**Your Settlement Award check is enclosed. Please note that your check is valid and negotiable for 180 days and will automatically expire on [DATE]. Therefore, please remember to cash or deposit your check AS SOON AS POSSIBLE.** After this expiration date, any uncashed remaining monies will be sent to Great Houston Community Foundation Hurricane Harvey Relief Fund, the *cy pres* recipient approved by the Court.

Your Settlement Award was calculated according to the following formula:

   a.  The amount of $250 per Collective Member will be deducted from the Net Settlement Amount prior to the determination of *pro rata* individual settlement shares and allocated to each Collective Member so that each Collective Member receives at least $250 in exchange for his/her release in this Settlement Agreement.

   b.  Collective Members will receive settlement shares which equal the total number of workweeks s/he worked for Broncs between June 2, 2013 and March 1, 2016.

   c.  The total number of settlement shares will be added together and the resulting sum will be divided into the Net Settlement Amount (less the allocation of $250 per Collective Member) to reach a per share dollar figure. The figure will then be multiplied by each Collective Member's number of settlement shares, and added to the $250 set aside to determine the Collective Member's Settlement Award.

All Settlement Award determinations shall be based on Broncs' available payroll data for Collective Members, and shall be provided to Broncs by Plaintiffs' Counsel.

Fifty percent (50%) of your Settlement Award is treated as back wages, and fifty percent (50%) is treated as non-wage interest and/or damages or liquidated damages. The portion treated as back wages will be subject to all required employee and employer-paid payroll taxes and deductions. The portion treated as non-wage interest and/or damages or liquidated damages is characterized as non-wage income, and you will be responsible for any applicable taxes on this portion. We cannot provide you with any tax advice, and you should contact your accountant or tax related advisors for any questions about taxes you may owe on these amounts.

By depositing or cashing your Settlement Award check, you release Broncs, Inc. and all of its past and present parent companies, investors in any of those companies, controlling persons,

subsidiaries, affiliates, directors, officers, and agents, from all overtime and wage claims that accrued during my employment as a flowback operator and/or service hand with Broncs at any time prior to March 1, 2016, including, without limitations, all state and federal claims for unpaid overtime wages, and related claims for penalties, interest, liquidated damages, attorneys' fees, costs, and expenses

**4. Who Are The Attorneys Representing Plaintiff And The Settlement Collective?**

Plaintiff and the Settlement Collective are represented by the following attorneys:

| | |
|---|---|
| Shanon J. Carson | Clif Alexander |
| Sarah R. Schalman-Bergen | **ANDERSON2X, PLLC** |
| Camille Fundora | 819 N. Upper Broadway |
| **BERGER & MONTAGUE, P.C.** | Corpus Christi, Texas 78401 |
| 1622 Locust Street | Telephone: (361) 452-1279 |
| Philadelphia, PA 19103 | Facsimile: (361) 452-1284 |
| Telephone: (215) 875-3033 | Email: clif@a2xlaw.com |
| Facsimile: (215) 875-4604 | Website: www.a2xlaw.com |
| Email: cfundora@bm.net | |
| Website: www.bergermontague.com | |

**5. How Will the Attorneys for the Settlement Collective Be Paid?**

You do not have to pay the attorneys who represent the Settlement Collective separately. The Court approved an attorneys' fee payment Plaintiffs' Counsel in the amount of thirty-five (35%) of the Gross Settlement Amount, as well as out-of-pocket costs in the total amount of $_____.

**6. Who May I Contact If I Have Further Questions?**

IF YOU NEED MORE INFORMATION OR HAVE ANY QUESTIONS, you may contact the Plaintiff's Counsel at the telephone number or email address listed below. Please refer to the Broncs, Inc. Overtime Settlement.

*Broncs, Inc. Overtime Settlement*
XXX [INSERT ADDRESS]
[INSERT TELEPHONE NUMBER]
[INSERT EMAIL]

This Notice only summarizes the lawsuit, the settlement and related matters. For more information, you may inspect the Court files at the Office of the Clerk, United States District Court located at United States District Court for the Western District of Texas, Midland/Odessa Division, 200 East Wall, Midland, TX 79701, from 8:30 a.m. to 4:30 p.m., Monday through Friday.

**PLEASE DO NOT CONTACT THE COURT.**